UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) Cause No. 1:17-cr-0222-JMS-TAB-11 |
| | ) |
| v. | ) |
| | ) |
| JAMES BEASLEY, et. al. | ) |
| | ) |
| Defendant. | ) |

### DEFENDANT JAMES BEASLEY'S SENTENCING MEMORANDUM

Comes now Defendant, JAMES BEASLEY ("Beasley"), by counsel, and for his sentencing memorandum in this matter, respectfully states and avers as follows:

### I. Brief Procedural Background.

By way of Superseding Indictment dated September 12, 2018 (the "Indictment"), Beasley faced and ultimately was convicted on August 15, 2019 following a three (3) week jury trial, of three (3) criminal charges in this Case: Count 1, Conspiracy to Distribute Methamphetamine under 21 U.S.C. §846 and Counts 16 and 17, Possession of Methamphetamine with Intent to Distribute under 21 U.S.C. §841(a)(1) (collectively the "Charges"). See generally Dkts 280 and 863.

The conspiracy charged in Count 1, according to the Government's evidence introduced at trial, occurred over approximately fifteen (15) months between the period August 27, 2016 through November 17, 2017 (the "Conspiracy"). Id. According to the Government, Beasley's own involvement in the Conspiracy, however, encompassed, literally, an eight (8) day period,

September 3, 2017[1] - September 11, 2017.  On or about September 3, 2017, the Government maintained that David Carroll, a charged and cooperating member of the Conspiracy ("Carroll"), first sold two (2) ounces of Methamphetamine to Beasley for cash.  See Carroll Trial Testimony ("Carroll Tr. Test."), July 31, 2017 and August 1, 2017.  Beasley's involvement, according to the Government's own evidence, ended on September 11, 2017 after Carroll had sold three (3) ounces of Methamphetamine to Beasley shortly before a vehicle in which Beasley was a passenger was interdicted.[2]

## II. Trial Facts as to Beasley and Counts 1, and 16-17.[3]

Examining the evidence introduced by Government at trial in a light most favorable to the Government (as is required in any Rule 29(a) analysis (see below)), Beasley's first actions in the Conspiracy occurred on or about August 27, 2017 when Beasley's text message and phone call to Carrol regarding the purchase of marijuana were intercepted by Government pursuant to a wire tap obtained on Carroll's phone (Phone IV for the purposes of the evidence).  Carroll Tr. Test., August 1, 2017.  The substance of Beasley's August 27, 2017 "conversations" with Carroll was clearly the purchase of an unknown quantity of marijuana; Carroll acknowledged this during his August 1, 2019 testimony on cross examination.   Carroll Tr. Test., August 1, 2017.

Working backwards, chronologically, through the facts as introduced by the Government at trial as to Beasley only, on September 11, 2017, Marion County Sheriff's Deputy Sgt James

---

[1] According to trial testimony and the Government's evidence, Beasley first purchased methamphetamine from Carroll on September 3, 2017 following an initial phone call (regarding the purchase of meth) from Beasley to Carroll on September 1, 2017.
[2] The same traffic stop that Beasley contested, pre and at trial by way of renewal of Beasley's Motion in Limine (Dkt 762) and corresponding objections.
[3] These facts were set forth in Beasley's Brief in Support of Judgment of Acquittal (Dkt ) and again in Beasley's Brief in Support of his Renewed Judgment of Acquittal.  However, for the purposes of considering an appropriate sentence for Beasley, it is important to consider Beasley's limited involvement in the conspiracy once again.

Barker ("Barker"), assisted by Indianapolis Metropolitan Police Department ("IMPD") officers Michael O'Day ("O'Day") and a third officer, assisted with an interdiction traffic stop of a yellow Chevy with Indiana License plate number TIO921 (the "Vehicle").  See Barker Trial Testimony ("Barker Tr. Test."), August 1, 2017.[4]  The Vehicle, even more specifically described by West as a yellow Chevy Cavalier with flames, was stopped by Barker, who determined the driver to be Susan Koch ("Koch").  Id.  Barker (and West) testified that though West was conducting surveillance on Carroll and believed Beasley to have just exited Carroll's apartment following a drug transaction, thus triggering the interdiction stop, the stop of the Vehicle was further "justified" because the Vehicle crossed the double yellow line while traveling south bound on North Sherman, Indianapolis (Marion County), Indiana and the Vehicle was observed by officers traveling 50 mph in a 35-mph zone on south bound left of center at the 3200 block of Central.  Id.

After stopping the Vehicle, Barker approached the driver's side of the Vehicle and made contact with Koch; while speaking with Koch, Barker allegedly smelled the odor of raw marijuana coming from the interior of the vehicle.  Barker Tr. Test., August 1, 2019.  Barker then had Koch and Beasley, the front seat passenger, exit the Vehicle.   Reluctantly, on cross

---

[4] There was conflicting testimony regarding the interdiction stop; specifically, IMPD officer Malachi West ("West"), who was conducting surveillance of Carroll's apartment at 3433 Central Avenue, Constitution Gardens Apartments, testified that Barker assisted O'Day.  See West Trial Testimony, August 1, 2019.  In fact. West even testified that he never lost site of the Cavalier after it left Carroll's apartment and that he observed O'Day stop the Vehicle.  Id.  However, Barker testified that he made the interdiction stop on the vehicle in which Beasley was a passenger and was assisted by IMPD Officers O'Day and a third IMPD officer that arrived at the stop even prior to O'Day's arrival.  Barker Tr. Test., August 1, 2019.  Anecdotally, an FBI report regarding the Beasley traffic stop was referenced and filed in support of Beasley's Motion in Limine (Dkt   ) also stated that O'Day made the stop and was assisted by Barker.  See Dkt 762 and attachments.

examination, Barker likewise testified that the third assisting IMPD officer effected a pat down search of Beasley but did not locate any contraband on Beasley's person. Id.

After Koch and Beasley had been removed from the Vehicle, Beasley had been patted down (with no contraband discovered), O'Day then arrived on the scene, spoke with Koch, and told Koch he had probable cause to search the Vehicle because Barker (and, apparently, O'Day) smelled raw marijuana coming from the inside of the Vehicle.[5] Id. Barker testified that O'Day advised Koch (and Beasley) of their *Pirtle* and *Miranda* warnings; Barker testified that Koch then consented to the search of the Vehicle. Id.

According to Barker, Koch told O'Day there was marijuana in her purse and marijuana was recovered from her purse from a plastic baggie in a red container in Koch's purse. Id. O'Day and Barker then searched the Vehicle and, pursuant to that search, O'Day located a set of digital scales, with a white crystal substance on it, under the front passenger seat of the Vehicle. Id. Barker stated that Beasley admitted the scales belonged to him and Beasley was then placed in handcuffs because Barker (and, apparently, O'Day) believed the white substance located on the scales was methamphetamine. Id.

Following a second pat down of Beasley, according to Barker's trial testimony, O'Day allegedly located (a) a grey plastic bag containing an unknown greyish substance (suspected heroin) from Beasley's sweatshirt, (b) a clear plastic baggie containing vegetation (suspected marijuana) from Beasley's waistband, (c) a clear plastic baggie with three (3) separate clear baggies containing a white crystal substance (suspected methamphetamine) also from Beasley's waistband. Id. It was determined that the Methamphetamine located on Beasley was just over

---

[5] O'Day was not called as a witness in the Government's case; likewise, the third officer involved in Bealey's interdiction stop that conducted the initial pat down of Beasley also did not testify for the Government. See generally, August 1, 2019 trial testimony.

eighty-three grams (less than three (3) ounces).  Id.  Barker attempted (and, ultimately, did) make in court identification of Beasley but only after Barker had first identified co-defendant Richard Grundy, III's counsel, Kenneth Riggins, as Beasley.  Barker Tr. Test., August 1, 2019.

Koch was ultimately released on a summons for possession of marijuana; no traffic citations were issued to Koch, however, for the alleged traffic violations to which West and Barker testified Koch committed.  Barker Tr. Test., August 1, 2019.

After the traffic stop was completed, Koch allegedly consented to the search of her residence at 4801 London Drive, Indianapolis, Indiana (the "Property").  Trial Testimony of IMPD detectives Mark Kunst ("Kunst") and Edward Bruce ("Bruce"), August 1, 2019.  Kunst further testified, over Beasley's objection, that Koch informed Kunst that Beasley had spent the previous night (i.e., September 10, 2017) at the Property.  Kunst Tr. Test., August 1, 2017.  Thereafter, Bruce located three (3) ounces of methamphetamine in three (3) baggies inside a black, men's shoebox, inside a Hangtime store bag.  Bruce Tr. Test., August 1, 2019.

According to the August 1, 2019 trial testimony of IMPD/FBI officer Patrick Bragg ("Bragg"), on September 5, 2017, while conducting surveillance on Carroll and Carroll's Orange Dodge truck, Carroll's truck was observed at Hangtime, a retail store located at East 38th Street in Indianapolis, Indiana, next to a yellow Cavalier.  Bragg Tr. Test., August 1, 2019.  Bragg observed a black male exit the Cavalier and get into Carroll's truck and, as Bragg was circling the block, the black male who had exited the Cavalier had gotten back in the Cavalier and both vehicles (Carroll's and the Cavalier), left the location.  Id.  Bragg testified on cross that he did not observe either Carroll or the black male from the Cavalier enter Hangtime.  Id.

Carroll testified that he sold methamphetamine to Beasley on three (3) occasions:  (a) September 3, 2017 (2 ounces), (b) September 10, 2017 (7 ounces), and (c) September 11, 2017

(3 ounces); Carroll testified that Beasley always paid cash on the barrel for the methamphetamine Beasley purchased and that Beasley owed Carroll no money. Carroll Tr. Test., July 31, 2017 – August 1, 2017. Carroll further testified that (a) he never sold heroin to Beasley and (b) that he sold marijuana to Beasley, including on August 27, 2017. Id.

In total, regarding Beasley's involvement in the Conspiracy, the Government believed that Beasley (a) purchased less than a pound of methamphetamine from Carroll (twelve (12) ounces), (b) never traveled out of state to purchase (or sell) methamphetamine, and (c) had no interaction or contact with any of the Conspiracy leaders.

### III. Beasley's Sentence should be Sufficient but Not Greater than Necessary.

In fashioning an appropriate sentence for Beasley, this Court must consider the following factors (as applicable to this matter and, Beasley, individually):

(1) the offense conduct and the characteristics of the defendant;

(2) the need for the sentence to:
    (a) reflect the seriousness of the offense, promote respect for the law and provide just punishment;
    (b) afford general deterrence;
    (c) afford specific deterrence; and
    (d) provide the defendant with any needed education, training, medical care or treatment;

(3) the kinds of sentences available;

(4) the Guidelines and related policy statements;

(5) the need to avoid unwarranted sentencing disparities; and

(6) the need for rehabilitation.

18 U.S.C. § 3553(a).

The overriding goal is to provide, after consideration of these factors, a sentence which is sufficient, but not greater than necessary, to achieve these purposes. *Id.* Significantly, the Guidelines are not to be considered presumptively reasonable by the district court. *United States v. Ross,* 501 F.3d 851, 853 (7th Cir. 2007). This Court may categorically reject a guideline if it disagrees with the Sentencing Commission's analysis. *Spears v. United States,* 555 U.S. 261, 263-64 (2009). And, it may be reversible error for a district court to presume a guideline sentence is reasonable. *Nelson v. United States,* 555 U.S. 350, 352 (2009). Lastly, extraordinary circumstances are not needed to impose a non-guideline sentence. *Gall v. United States,* 552 U.S. 38, 47 (2007).

### IV. The Guideline Sentence is Excessive where Beasley is Concerned.

#### A. The Pre Sentence Investigation Report Calculation.

The Pre-sentence Investigation Report writer opines that Beasley's guideline sentence is 235-293 months, based upon a finding of offense level 34 and criminal history category V. See Dkt 1046 at p. 22. The calculated base offense level (34) was determined because the guideline for a violation of 21 U.S.C. §§ 841(a)(1) and 846 is USSG §2D1.1 and according the same, the base offense level is 34, when there is at least 500 grams but less than 1.5 kilograms of actual methamphetamine. USSG §§2D1.1(a)(5) and (c)(3). Id. at pp. 8-9.

Beasley doesn't dispute that this is the appropriate guideline calculation (and, thus, had no objection thereto), however, as argued hereinbelow, the offense conduct where Beasley's involvement is concerned and Beasley's characteristics justify a less than guideline sentence.

**B.      Beasley's Conduct Supports a Less Than Guideline Sentence.**

As to Beasley, and under 18 U.S.C. § 3553(a)(1), Beasley's offense conduct must be considered by this Court and support a sentence less than the guideline sentence in this Case. Beasley's offense conduct can be summarized as follows:

(i)     Beasley's involvement in the Conspiracy encompassed, literally, an eight (8) day period, September 3, 2017 - September 11, 2017;

(ii)    Other than Carroll, Beasley had no association, at all, with any of the other charged conspirators or co-defendants on trial with Beasley now;

(iii)   Beasley paid only cash, on the barrel, the for a total of twelve (12) ounces of methamphetamine;

(iv)    Beasley never traveled out of state to purchase (or sell) methamphetamine;

(v)     No evidence from any of the hours long wire taps that were introduced of Beasley using "drug code" or any other language indicative of his participation in the charged conspiracy;

(vi)    No evidence of controlled buys of methamphetamine from Beasley or anyone alleged to be selling methamphetamine on Beasley's behalf;

(vii)   No evidence of telephone communications or transactions, of any kind, between Beasley and co-conspirators other than Carroll;

(viii)  No evidence of any other communications (i.e. text messages or other), between Beasley and co-conspirators other than Carrol;

(ix)    No evidence of Beasley warning co-conspirators of the presence of law enforcement, or vice versa, despite the fact that Beasley was arrested on September 11, 2017, more than two (2) months prior to the other co-conspirators' arrest in this Case;

(x)     No evidence Beasley provided additional customers or leads for potential customers to any co-conspirator, or vice versa;

(xi)    No evidence that Beasley received any measurable benefit from the conspiracy (i.e. – Beasley was never associated with nor were any large sums of cash found on or near Beasley);

(xii) No evidence that Beasley associated, in any manner, with any of the co-conspirators in this Case (in fact, there was no evidence, at all, that Beasley associated with or fraternized with Carroll in any manner other than to pay for and pick up methamphetamine which was charged at Carroll's normal, going rates);

(xiii) No evidence from any of Beasley's statements over the wiretaps or otherwise that Beasley was intending to purchase methamphetamine from Carroll and, in turn, distribute the same to Beasley's (or, for that matter, other customers of the charged conspiracy) other than the weight itself that Beasley had purchased;

(xiv) No evidence that Beasley purchased methamphetamine exclusively from Carroll to further the interests of the conspiracy; and

(xv) The charged conspiracy and co-conspirators had an obviously vast customer base for methamphetamine and heroin of its own and no (alleged) customers of Beasley were the same as those of the conspiracy.

While the Court denied Beasley's twice asserted Rule 29 motions for the entry of judgment of acquittal, certainly Beasley's limited involvement in the Conspiracy as set forth herein justifies a sentence below the proposed guideline range.

**C.  Beasley's Offender Characteristics Support a Less Than Guideline Sentence.**

**1.  Beasley's Personal Background and Dependants.**

Beasley is a thirty-nine (39) year old black male who has lived in Indianapolis all of his life. See generally, Dkt. 1046. Beasley has his GED. Id. at p. 5. And, Beasley is the father to one (1) minor child. Id. Beasley speaks to his mother, who is in poor health, eevery week (though Beasley is incarcerated). Id at p. 18. Beasley's father was never really present in his life and, in fact, Beasley, reported that he had no relationship with his father, saw him only occasionally while visiting his grandmother during the summers in Tennessee. Id. Though Beasley did maintain a close relationship with his grandmother, with whom he lived for four (4) months at age fourteen (14) and who he visited frequently. Id. at p23. While Beasley did report that he grew up in a loving home (primarily because of his mother's involvement in his life, Beasley stated in the Report that his lower-class neighborhood was filled with crime and

9

violence. Id.

While Beasley has only one (1) minor child (13 years old), Beasley does have another child, a nineteen (19) year old daughter. Beasley reported that while he could have been a better father, prior to his incarceration on this Case Beasley had regular visitation and contact with his children. Id. And, Beasley was court ordered to pay child support though he believed he was approximately ten thousand dollars ($10,000) in arrears to the mother of his second child. Id.

### 2.     Beasley's Substance Abuse Issues.

Beasley stated that while, as result of his incarceration on this Case, he has now been sober for approximately two (2) years, he does believe he would benefit from further substance abuse treatment and Beasley further admitted that his drug use is the cause for his involvement in the instant offense. Id. at p. 21. Beasley reported that he extensively used illegal drugs and alcohol from a very young age right up until the time that he was arrested on this Case. Id. at p. 20. And, that Beasley had attempted (obviously, unsuccessfully) several programs for drug and alcohol addiction treatment. Id. As such, Beasley could benefit from treatment while he serves his time at the Bureau of Prisons on this Case.

Based upon Beasley's personal characteristics, a less than guideline sentence is warranted in this Case.

## V. Conclusion.

A sentence below the proposed guideline range should be entered as to Beasley.

Dated:  Indianapolis, Indiana
   December 8, 2019

SOVICH MINCH, LLP

*/s/ Theodore John Minch*

---

Theodore J. Minch, Attorney No. 18798-49
445 North Pennsylvania, Suite 405
Indianapolis, Indiana 46204
Tel: (317) 939-1050
Email:  timinch@sovichminch.com

*Counsel for James Beasley, Defendant*

**CERTIFICATE OF SERVICE**

      This is to certify that a copy of the foregoing was forwarded this day to the following party representatives for Government and Co-Defendants via electronic mail and this Court's electronic filing system this 8th day of December, 2019:

Bradley Blackington, Esq.
bradley.blackington@usdoj.gov

Lindsay Karwoski, Esq.
lindsay.karwoski@usdoj.gov

John T. Tennyson, Esq.
jtennyson@nashville-law.com

Joshua S. Moudy, Esq.
josh@kammenlaw.com

Kenneth Lawrence Riggins, Esq.
Kennethriggins@yahoo.com

Thomas A. Brodnik, Esq.
thomas.a.brodnik@msth.com

Maria G. Lupita Thompson, Esq.
lupita@thompsonlawllc.legal

Finis Tatum, IV, Esq.
ftatum@glaserebbs.com

                                */s/ Theodore J. Minch*_____
                                Theodore J. Minch (IN#18798-49)
                                SOVICH MINCH, LLP
                                *Attorneys for James Beasley, Defendant*